IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | | |
|---|---|---|
| PAMELA K. GUSCHAUSKY, individually and on behalf of all other similarly situated, | ) ) ) | CV 10-59-H-DWM |
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER |
| AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS, AFLAC INCORPORATED, AND DOES 1-10, | ) ) ) ) | |
| Defendants. | ) ) | |

The plaintiffs in this class action ("the class") move for an award of attorney's fees under Federal Rules of Civil Procedure 23(h)(1) and 54(d)(2) and pursuant to their settlement agreement with the defendants (collectively "AFLAC"). AFLAC opposes the motion in part. The Court must make findings of fact and state its conclusions of law under Rule 23(h)(3) and 52(a). The Court does so here, granting the class's motion.

**FINDINGS OF FACT**

1. This class action arises from AFLAC's allegedly wrongful retention of insurance premiums.

1

2.  The case began as a $559.80 premium dispute between Pamela Gushausky, the named plaintiff, and AFLAC but evolved into a potentially multi-million dollar class action.

3.  In its complaint, the class alleges that AFLAC wrongfully retained premiums for dependent child coverage, even though a dependent child might never have existed or was otherwise ineligible for dependent child coverage.

4.  The class alleges that, under this practice:

    > [I]f a policyholder never notified [AFLAC] that he or she was being charged for family coverage but had no eligible dependent children, [AFLAC] would continue to collect family coverage premiums, a scenario that [AFLAC] admits, as a general insurance principle, is wrong.

5.  Based on its allegations, the class filed a complaint on December 16, 2010, asserting claims for breach of contract, negligence, and unjust enrichment. (Doc. 1.) The complaint also included a request for punitive damages.

6.  The parties reached a settlement and the Court preliminarily approved it on December 12, 2011. (Doc. 55.)

7.  Under the settlement agreement, AFLAC will refund the premiums owed to class members that submit a valid claim. In other words, AFLAC has not created a specific or definitive fund to pay the settlement claims. Instead, it

will pay those claims as they are made and reviewed.

8. In addition to the provisions related to the refunds, the settlement contains a section governing attorney's fees. (*See* Settlement Agreement, doc. 52 at § 8.)

9. AFLAC does not oppose the class's entitlement to reasonable attorney's fees and expenses, and both parties stipulate that the Court has "sole[ ] and exclusive[ ]" discretion to determine those amounts:

> 8.1  Within the time set forth in the Preliminary Approval Order, or as otherwise directed by the Court, Class Counsel may apply to the Court for an award of attorneys' fees and reimbursement of expenses, *which amount shall be determined solely and exclusively by the Court* at or after the final fairness hearing. [AFLAC] does not oppose Class Counsel's entitlement to an award of attorneys' fees and expenses, but it reserves its right to object to the amount of attorneys' fees and expenses sought by Class Counsel. Class Counsel's attorneys' fees and expenses, if any, as approved and ordered by the Court, shall be paid within fourteen (14) days after Final Approval and shall be paid without reducing or depleting the Settlement Payments to be made to the Class Members and without diminishing any other amount owed by [AFLAC], if any, under the terms of this Settlement Agreement.

(Settlement Agreement, doc. 52 at § 8.1.) (emphasis added).

10. After the Court preliminarily approved the settlement, the class counsel moved for an award of attorney's fees. The parties briefed the motion and

3

both filed affidavits in support of their positions: the class counsel asking for an award based on a contingency fee or percentage of the settlement value and AFLAC asking for a much smaller award based on a lodestar calculation.

11. The Court held a hearing on March 21, 2012, to address the motion for attorney's fees and the parties' joint motion for final approval of the class action settlement.

12. Over the course of this litigation, the parties' estimation of the settlement value has converged significantly. Initially, class counsel moved for attorney's fees in the amount of $5,323,907.25. This calculation was based on a projected settlement value of $21,295,629.00, according to the class. AFLAC placed a much smaller value on the settlement—$4,254,782.00. Later, after actuaries for both parties acknowledged errors in their calculations, the parties stipulated to a number—$6,601,633.00. (Doc. 82.) The class argues that this sum is the minimum settlement value, while AFLAC argues that it is the maximum settlement value.

13. The plaintiffs argue that the $6.6 million sum should be higher for three reasons:

   a.   The $6.6 million sum incorrectly excludes "Policies where the

        treatment date giving rise to the claim is before the policy's issue date and policies where the treatment date giving rise to the claim is after the policy's termination date, or after 2/15/2012, if the policy is active[.]" If AFLAC included those policies, the calculated value of the settlement would increase to $6,728,171.00.

    b.    If the settlement calculation was based on the publicly available data for average premiums, which are more reliable than AFLAC's data, the settlement value would increase to $9,103,652.

    c.    The settlement calculation does not include the future and or equitable benefits to the injunctive relief class, which the plaintiffs claim are worth $9,278,148.00 in the next eight years alone and would be much higher if extended out further.

14.    AFLAC agrees that it might have to pay out $6.6 million to the settlement beneficiaries. But it claims that this sum is the maximum settlement value because there are several reasons other than age-based denials for why AFLAC might have coded a denial as "dependent not covered" and, thus, why a policy holder might not have a valid settlement claim. AFLAC argues, for instance, that the policy holder might not have paid for dependent coverage.

15.    The class argues in response that the reason for denial is irrelevant. Instead, what matters is whether a policy holder paid a premium for Family Coverage without any covered dependents.

16. The class's actuary assumed that all of the policyholders listed in the stipulated spreadsheet, (doc. 75-3)—the spreadsheet upon which the stipulated sum of $6,601,633.00 is based—are class members. AFLAC, on the other hand, claims that not all of the policyholders in the spreadsheet are necessarily class members and, thus, not all of the policy holders in the spreadsheet are entitled to a refund. Therefore, it argues that the $6.6 million sum is the maximum payout.

17. While apparently claiming that not all of the policy holders listed in the stipulated spreadsheet are class members, AFLAC has not offered any definitive guidance on how many policy holders in the spreadsheet are class members and how many are not. Instead, AFLAC acknowledges that it might potentially have to pay out $6.6 million to settlement beneficiaries.

18. Even assuming that not all of the policy holders in the stipulated spreadsheet are class members, the settlement value might still meet or exceed $6.6 million for the reasons given by the class in its explanation of why the settlement value should be higher (*see supra*).

19. Both parties agree that the settlement value could potentially be $6,601,633.00, and, in the Court's view, that sum represents a reasonable estimation of the settlement value.

20. Class counsel argue that they should be awarded attorney's fees in the amount of $1,650,408.25, which is 25% of the $6,601,633.00 estimated settlement value.

21. AFLAC argues that class counsel should be awarded attorney's fees in the amount of $300,000.

22. Class counsel also argue that they should be awarded reasonable expenses and costs, which totaled $54,872.55 at the time of the parties March 12, 2012, stipulation.

## CONCLUSIONS OF LAW

23. Attorney's fees and costs may be awarded in a class action when the award is authorized by law or the parties agree to the award. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(h)).

24. When a court awards attorney's fees and costs, the court must ensure that the award is reasonable. *Id.*

25. There are two acceptable methods for calculating an award, depending on the circumstances: the lodestar method and the percentage-of-recovery method. *Id.*

26. "The lodestar figure is calculated by multiplying the number of hours the

prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* at 941. The Ninth Circuit explained:

> The "lodestar method" is appropriate in class actions brought under fee-shifting statutes (such as federal civil rights, securities, antitrust, copyright, and patent acts), where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation.

*Id.* (citations omitted).

27. The lodestar figure is "presumptively reasonable," but courts may adjust that figure upward or downward by a multiplier that reflects "a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 941–42 (citations omitted).

28. The U.S. Supreme Court, though, has called this practice into serious doubt. *See Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662 (2010) (noting that lodestar multipliers should be applied in only "rare" and "exceptional" circumstances because the lodestar calculation already takes into account the reasonableness factors, such as quality of representation and the

complexity of the case).[1]

29. Where "a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In Re Bluetooth*, 654 F.3d at 942. This doctrine—the Common Fund Doctrine—applies when: "(1) the classes of persons benefitted by the lawsuits are small in number and easily identifiable; (2) benefits can be traced with some accuracy; and (3) the court has confidence the costs of litigation can indeed be shifted with some exactitude to those benefitting." *Stavenjord v. Mont. St. Fund*, 146 P.3d 724, 125 (Mont. 2006) (citing *Boeing Co. v. VanGemert*, 444 U.S. 472, 478 (1980)).

30. "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing*, 444 U.S. at 478.

31. The Common Fund Doctrine recognizes that the only way to equitably spread the attorney's fees across all the beneficiaries is to levy the attorney's

---

[1] In *Perdue*, the Supreme Court was addressing an award of attorney's fees under the fee-shifting statute in 42 U.S.C. § 1988. But the Court's reasoning applies to the lodestar method more generally, regardless of whether the award is made under a fee-shifting statute.

fees against the common fund. That does not imply, however, that the Common Fund Doctrine is inapplicable where, as here, attorney's fees are paid independently of the sum made available to the settlement beneficiaries. When attorney's fees are paid independently, the aggregate amount of attorney's fees and class settlement payments may be viewed as a "constructive common fund." *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1146–47 (9th Cir. 2000) (citations omitted); *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349 (D.D.C. 2007); *see also In re Bluetooth*, 654 F.3d at 943 (quoting *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996)). The Eighth Circuit explained in *Johnston*:

> Although under the terms of each settlement agreement, attorney fees technically derive from the defendant rather than out of the class' recovery, in essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery . . . . Accordingly, the direct payment of attorney fees by defendants should not be a barrier to the use of the percentage of the benefit analysis in the cases.

*Johnston*, 83 F.3d at 246.

32. Even if the common fund elements are not technically met, the Court may

still apply the percentage-of-recovery method if the court is able to reasonably estimate the settlement value based on the terms agreed by the parties. *See e.g. Suzuki v. Hitachi Global Storage Techs., Inc.*, 2010 WL 956896 (N.D. Cal. Mar. 12, 2010). For example, even if the settlement does not result in a definite amount of money that is deposited into an account and made available to the beneficiaries, the court may still treat the settlement as creating a common fund if the court can reasonably estimate the settlement value. *See Shaffer v. Continental Cas. Co.*, 362 Fed. Appx. 627, 631 (9th Cir. Jan. 12, 2010). In *Shaffer*, the Ninth Circuit approved the district court's use of the percentage-of-recovery method, even though no cash fund was created and the settlement value was based on actuarial testimony:

> Here, no cash fund exists. However, class counsel's expert actuary estimated the value of class benefits to be $24–33 million. Of the $5 million for costs, attorneys' fees and incentive payments, about $4.4 million represents attorneys' fees. Thus, attorneys' fees represent about 13–18% of the value of class benefits – well below the 25% benchmark.

*Id.* at 632–33. Similarly, the Middle District of Pennsylvania has observed:

> [T]he "economic reality" is that the agreement to pay verified settlement claims of class members as well as counsel fees yields a mathematically calculable amount

11

> that can be regarded as "a constructive common fund."[2]
> [*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 820 (3rd Cir. 1995)]. Indeed, "[c]ourts have relied on 'common fund' principles and the inherent management powers of the court to award fees to lead counsel in cases that do not actually generate a common fund." In *General Motors*, *supra*, our Court of Appeals suggested that the preferred "primary determinant" of an award of attorneys' fees in a "constructive" common fund case is the percentage of recovery method. *Id.* at 821.

*Petruzzi's Inc. v. Darling-Del. Co., Inc.*, 983 F. Supp. 595, 604 (M.D. Pa. 1996).

33. Finally, as the *Shaffer* court remarked, the Ninth Circuit has repeatedly held that the "benchmark" for an award based on the percentage-of-recovery method is 25%. 362 Fed. Appx. at 633; *In Re Bluetooth*, 654 F.3d at 942 (collecting cases). "Special circumstances," however, may justify a departure. *In Re Bluetooth*, 654 F.3d at 942. (citations omitted).

34. The settlement here did not necessarily create a common fund in the traditional sense. There is not, for instance, a dedicated sum of money set

---

[2] The cases cited above show that the term "constructive common fund" has two meanings. The term may refer to the aggregation of the sum of money paid to the settlement beneficiaries and the independent sum paid for attorney's fees. *See Lobatz*, 22 F.3d at 1146–47. And the term may refer to a settlement that does not technically meet the traditional elements of a common fund but whose value is nonetheless reasonably estimable by the court. *See Petruzzi's Inc.*, 983 F. Supp. at 604.

aside for the settlement beneficiaries to draw upon. Instead, AFLAC will pay claims as they are made and reviewed. Moreover, AFLAC will pay the attorney's fees and expenses independently from the money that is paid to settlement beneficiaries—that is, they will not be paid directly out of a fund that is made available for settlement claims.

35. While the settlement might not have created a traditional common fund, it created a constructive common fund (in both senses of the term, *see supra* note 2). There is not a definitive sum of money that has been set aside for settlement claims, but the Court can reasonably estimate the settlement value, as explained above. *See Shaffer*, 362 Fed. Appx. at 631; *Petruzzi's Inc.*, 983 F. Supp. at 604. That sum, when aggregated with the independent payment of attorney's fees, creates a constructive common fund. *See Lobatz*, 22 F.3d at 1146–47; *In re Bluetooth*, 654 F.3d at 943. In short, even if the traditional elements of the Common Fund Doctrine are not met here, the Court may still utilize the percentage-of-recovery method for calculating attorney's fees. *In re Bluetooth*, 654 F.3d at 942.

36. Both parties agree that the settlement value could potentially be $6,601,633.00, and, in the Court's view, that sum represents a reasonable estimation of the settlement value.

37. The class asks the Court to apply the 25% "benchmark" for calculating attorney's fees, and the Court sees no reason to deviate from that presumptively reasonable percentage. *See Shaffer*, 362 Fed. Appx. at 633; *In Re Bluetooth*, 654 F.3d at 942. Consequently, the Court awards the class $1,650,408.25 in attorney's fees.

38. Applying the lodestar method in this instance—and awarding attorney's fees in the amount of $300,000—would result in a windfall to AFLAC. The class might very well have prevailed at trial and recovered more than $6.6 million, particularly in light of the punitive damages count. If that were the case, then the plaintiffs would likely have received a contingency fee far in excess of $300,000.

39. Finally, the Court awards the class its costs and expenses, which totaled $54,872.55 at the time of the parties March 12, 2012, stipulation in accordance with the terms of the parties' settlement agreement.

IT IS ORDERED that the class's motion for attorney's fees (doc. 61) is GRANTED. The defendant shall pay the class's attorney's fees in the amount of $1,650,408.25 in accordance with the terms of the parties' settlement agreement.

IT IS FURTHER ORDERED that the defendant shall pay the class's reasonable costs and expenses in the amount of $54,872.55 plus additional

reasonable costs and expenses that the class has incurred since the parties March 12, 2012, stipulation.

Dated this 2nd day of April 2012.

/s/ Donald W. Molloy
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT